## WHITE vs. OSBORN.

*Trover* may be maintained by one *tenant in common* against another where the latter *sells* the whole property held in common, although it be not removed beyond the reach of the plaintiff; he may take possession of the property when opportunity offers, but he has an election to do so, or bring trover.

THIS was an action of *trover*, tried at the Clinton circuit in June, 1836, before the Hon. ESEK COWEN, then one of the circuit judges.

The plaintiff and defendant were tenants in common of a sloop called the *General Warren*, navigated on Lake Champlain, and employed in the transportation of lumber from *Plattsburgh* and other ports on the lake to *Whitehall*; the plaintiff owning *one-eighth* and the defendant *three-eighths* of the vessel. On 10th February, 1832, the defendant *sold* the sloop to one Peter Comstock, for the sum of $2400. After the purchase Comstock continued the vessel in the same business. In the spring of 1834, a demand was made of the *defendant*, in behalf of the plaintiff, to *restore* the *one-eighth* of the vessel ; to which he answered that he had none of the plaintiff's property in his possession. This suit was commenced in December, 1835. Since 1830, with the exception of one year, the plaintiff resided on the shore of Lake Champlain, where he could see the vessel passing in her trips to and from Whitehall, as she was obliged to pass within a short distance of his door. The vessel had undergone no change since the purchase by Comstock, ex-

cept that she was called the General Warren of *Whitehall*, instead of the General Warren of *Plattsburgh*. The plaintiff having rested, the defendant moved for a nonsuit on the ground that the parties being tenants in common, the action of *trover* would not lie. The judge refused to nonsuit the plaintiff.

The defendant produced in evidence the record of a judgment of the supreme court of Vermont, in favor of the plaintiff against one Cyrus Smith, from which it appeared that in August, 1830, Smith, on an *attachment* sued out by the now defendant, seized the same vessel for a debt owing to the now defendant from one *Griffin*, who was then the owner of *seven-eights* of the vessel; that for such seizure an action was brought by the plaintiff against Smith, and a recovery had to the amount of $960,98. The plaintiff then proved that in the suit against Smith he claimed to recover on the ground that the sloop had been pledged to him by *Griffin*, until from her earnings he should be paid a debt due to him from Griffin, and that upon that occasion no claim was made as to the *one eighth* of the vessel which belonged to himself. The evidence was objected to by the defendant, but was admitted by the judge. The defendant then proved that he purchased *seven-eighths* of the vessel at a sale of the same by virtue of an execution issued on a judgment in the cause commenced by him as aforesaid against Griffin. He also proved that the judgment against Smith had been fully satisfied. The evidence being closed, the counsel for the defendant insisted and requested the judge so to charge the jury : 1. that the parties being tenants in common of the vessel, the plaintiff, under the circumstances of the case, was not entitled to maintain this action ; 2. that the judgment in Vermont was a bar to this action; and 3. that although the jury should find that the recovery in Vermont was only for the interest pledged by Griffin, yet the plaintiff was not entitled to maintain this action, because he could not divide or split up his demand or cause of action, but should in the action in Vermont have claimed a recovery for the whole vessel. The judge, after expressing his doubts as to the plaintiff's right of recovery,

said, that for the purpose of enabling the parties to obtain a more deliberate consideration of the question involved, he would direct the jury to find for the plaintiff upon the prin·cipal question; and he did so accordingly. As to the judgment in Vermont, he decided it was no bar. The jury found for the plaintiff for the one-eighth of $2400, with the interest thereof. The defendant asks for a new trial.

*J. L. Wendell*, for the defendant. One tenant in common of a chattel cannot maintain *trover* against his co-tenant for the *mere sale* of the property, unless in consequence of such sale by one, the property be placed beyond the reach of the other; Bull. N. P. 34; whilst it remains where he can exercise as against the purchaser the right which before he might have exercised as against the vendor, viz. "*to take possession when he can see his time*," he can bring no action. Such is declared to be the law by Lyttleton, § 323, endorsed by Coke, Co. Litt. 189, *b*, and this has *ever since* been the law, say this court in *St. John* v. *Standring*, 2 Johns. R. 468. It cannot be denied, however, that notwithstanding this unqualified acknowledgment of the law as laid down in Lyttleton, this court did, in *Wilson* v. *Reed*, 3 Johns. R. 175, lay down the proposition in reference to the right of action by one tenant in common against the other, that there is no distinction between a *sale* and a *total destruction* of the chattel by the party against whom the action is brought. This was going farther than the facts of the case required, and beyond what the counsel asked in whose favor the decision was made. They placed the right to recover upon the distinction that by the sale of the property in that case, and its subsequent *consumption*, it was put beyond the reach of the plaintiff; admitting that if he could have regained possession he would have had no right to bring *trover*. This distinction was taken upon the *trial* of *Wilson* v. *Reed*, and alluded to by the court in *Mersereau* v. *Norton*, 15 Johns. R. 179, in which latter case the law as laid down in Lyttleton is re-asserted and the case of *Wilson* v. *Reed* virtually overruled. It is also insisted for the defendant, that if the sale of the vessel in 1832 gave a right of action,

then the previous sale in Vermont gave a similar right; and if so, the plaintiff should in that action have claimed compensation for the whole vessel, and not brought two actions when one would have disposed of the whole matter.

*G. A. Simmons*, for the plaintiff, insisted that the action ought to be maintained; that the old idea of physical destruction being necessary to give this action to one tenant in common against another, was too narrow. That the true rule is this: if a co-tenant does any act, in respect to the common property, inconsistent with the rights which he may lawfully exercise: as if he exerts a power or control over it which his situation does not authorize, as in the present case, when he undertakes to sell the property as his own, he subjects himself to an action. The counsel then cited and commented upon many cases, most of which being noticed in the opinion of the court, are not here adverted to.

*By the Court*, COWEN, J. There is no foundation for saying that the suit in Vermont was a bar. The judgment being satisfied, and the defendant having been a co-trespasser with the deputy, it was a bar to any farther action founded on the *lien* for Griffin's debt, but nothing more. The alleged conversion of the *one eighth*, the gravamen of the present action had not yet taken place. That arose, if at all, from the sale of the sloop and the consequent exclusive dominion exercised by Comstock, the purchaser.

The objection of the defendant is, that a general bill of sale by him of the whole, though followed by an exclusive claim and dominion in the purchaser, is not adequate evidence of a conversion as against his co-tenant. The contrary has been often said without qualification. Spencer, J. in *Wilson* v. *Reed*, 3 Johns. R. 178. Woodworth, J. in *Hyde* v. *Stone*, 9 Cowen, 232. Sutherland, J. in *Mumford* v. *McKay*, 8 Wendell, 444. 2 Kent's Comm. 350, 3d ed. note. Mattocks, J. in *Tubbs* v. *Richardson*, 6 Verm. R. 447. Abbott, Ch. J. and Bayley, J. in *Barton* v. *Williams*, 5 Barn. & Ald. 395. And it has been distinctly held, where the

sale was such as to work a total destruction: as by retailing rum held in common, *Wilson* v. *Reed*, 3 Johns. R. 175; or selling grain, *Mumford* v. *McKay*, 8 Wendell, 442—these were total sales of consumable articles, the almost certain consequence of which would be a physical destruction.

In *Wilson* v. *Reed*, the judge at the circuit denied that the rule applied to the scale beams sold, and in suit in the same action with the rum, but that question was not reviewed on the motion for a new trial.

But we think *Hyde* v. *Stone*, 7 Wendell, 354, goes the whole length of the plaintiff's claim here. There the plaintiff, a tenant in common, sued his co-tenant for a sale of household furniture, farming utensils and other personal property, some of which the defendant admitted he had sold, and that others were destroyed; and on his refusing to account for and deliver the goods, the plaintiff was allowed to recover his interest in the whole without distinction between what was sold and what was lost. The evidence of conversion was the simple admission of the defendant, that a part had been *sold* and a part destroyed.

That a mere sale by one tenant in common of the entire chattel is itself a conversion, is also presumed to accord with the general sense of the profession, and the course of decisions at the circuit, at least in this state. *Jennings* v. *Lord Granville*, 1 Taunt. 241, is not incompatible with the doctrine. It conceded that a sale may work a conversion, if it put the property beyond the reach of the co-tenant; but denied the action of trover, because, though the property in dispute, a whale, was converted by extracting the oil, &c., yet this was but converting it to its proper use, and the plaintiff might still take the oil. There was no sale, but a mere refusal to deliver. *Tubbs* v. *Richardson*, 6 Verm. R. 442, which was a sale by one tenant in common of a part of certain wool, being less than his own share, though he refused on demand to deliver the residue, denied an action on the same principle.

On the whole, though there may be exceptions, we think, as a general rule, that a sale of the whole chattel by one tenant in common entitles his co-tenant to an action of *trover*.

White v. Osborn.

And a general sale, such as indicated by this bill of sale, without restricting it to part, is *prima facie*, at least, evidence of a total sale. In legal effect, to be sure, it passes but the share belonging to the vendor, and the co-tenant who is not consulted may so consider it, and take the property when opportunity offers. But he may, at his election, bring trover.

New trial denied.