## WHITE *vs.* PHELPS.

A mere declaration by a mortgagee of personal property, on learning from the mortgager that he had sold it, that he cared nothing about the property, and did not want it, does not preclude him from afterwards asserting his title under the mortgage.

If a mortgager of personal property, or any one claiming under him, sell the entire property, as owner, in exclusion of the rights of the mortgagee, such sale is a conversion, and the mortgagee may maintain trover.

TROVER, for a horse. The plaintiff, to show property in himself, gave in evidence a mortgage of the horse, from one John G. Howe, dated December 1st, 1837, and duly recorded, to secure the sum of $25.

It appeared in evidence, that the horse having been left in the possession of Howe, he, in February, 1838, sold him to one O. P. Greenleaf, for the sum of $24; and that soon after this, Howe informed the plaintiff of this sale, and the plaintiff replied that he cared not what became of the horse, he did not want him.

In the spring following, the horse passed from Greenleaf into the possession of the defendant, who held and used him, as owner, until October or November following, but the terms on which Greenleaf parted with him did not distinctly appear.

There was evidence tending to show that the defendant was informed of the plaintiff's mortgage, in October or November, and that when the plaintiff demanded the horse, on

the 19th of November, the defendant had sold him and parted with the possession.

The court directed the jury that if Howe, having possession of the horse, sold him to Greenleaf for a valuable consideration, and the plaintiff afterwards assented to that sale, that was a waiver of his right to hold under the mortgage, and the plaintiff was not entitled to recover.

The court further instructed the jury, that a demand upon the defendant, after a sale of the horse by him, would not be evidence of a conversion—that if the plaintiff left the horse in Howe's possession after taking the mortgage, Howe might sell his right of redemption, and deliver the possession—that the purchase by Greenleaf, if there was no assent by the plaintiff, transferred that right—that if he delivered the horse to the defendant, with or without consideration, the defendant was not guilty of any conversion in receiving and holding him until he was demanded, and that if he sold and transferred him before any demand made by the plaintiff, even if the transfer was made to avoid a demand, he would not thereby be answerable to the plaintiff, and that a subsequent demand would not avail, because the defendant had not the power when made to comply with it.

The jury returned a verdict for the defendant, and the plaintiff moved for a new trial.

*Baker*, for the plaintiff.

*Farley, & Haseltine*, for the defendant. The action cannot be maintained, 1. Because the plaintiff assented or agreed to the sale of the horse to Greenleaf, which was for the full value of the horse. He thereby discharged his lien, or waived his right under the mortgage. If the plaintiff had been present when the sale took place, and expressly assented to it, declaring he cared not what became of the horse, and that he did not want him, there could be no doubt but such declaration would be a waiver of his rights under the mort-

gage. And his attempting to set up a claim afterwards to the property would be a fraud upon the purchaser.

2. A demand and refusal, under the circumstances of this case, are not evidence of a conversion. If the defendant was unable to comply with the demand, a refusal would furnish no evidence of a conversion. 1 *Camp. R.* 441, *Smith* vs. *Young;* 2 *Phil. Ev.* 19, (2 *Am. Ed.;*) 5 *N. H. Rep.* 228, *Robinson* vs. *Burleigh;* 1 *Chitty's Pl.* 155; *Buller's N. P.* 45 ; 3 *Stark. Ev.* 1495.

3. There was no wrongful conversion of the horse by the defendant. The mortgage transferred the legal title to the horse to the plaintiff, but the right of redemption remained in the mortgager, and the horse was left in his possession. This right he might legally transfer to Greenleaf, or any one else ; and his vendee, and those who should afterwards own the right to redeem, would have the same rights in relation to the mortgaged property as the mortgager had after the execution of the mortgage. The sale of the horse by the mortgager could not be a conversion of the property, as nothing would pass by the sale but the right to redeem. The mortgagee's title would not be impaired. He could not maintain an action against the mortgager until a demand and refusal, he still retaining the possession ; and his vendee, and the subsequent owners of the right to redeem, would stand precisely as the mortgager, and in no worse condition. 13 *Pick.* 216, *Hunt & a.* vs. *Hatton.*

PARKER, C. J. The declaration of the plaintiff, made after the transfer of the property by Howe, the mortgager, that he cared not what became of the horse, &c., cannot preclude the plaintiff from setting up the mortgage title, there being no evidence of any consideration for it as a release, and the sale not having been made on the credit of it, if that might make any difference. It was a mere loose declaration, which cannot operate as an estoppel. *Rice* vs. *Chase,* 9 *N. H. Rep.* 179. It might have a tendency to show that the

White *v.* Phelps.

mortgage had been settled, and be used with other evidence to show that fact, if alleged.

Upon the other part of the case, also, we are of opinion that the jury were misdirected. It is true, that the defendant might purchase the horse, subject to the mortgage; and there seems to be no objection, in such case, to a delivery of the animal to the vendee, if the rights of the mortgagee are not thereby prejudiced. A removal of the horse, under such a sale and delivery, to a distance, so that the mortgagee could not gain possession of him without great inconvenience, might be evidence of a conversion.

There seems to be no reason to doubt that a purchaser of the property, subject to the mortgage, who had lawfully taken the possession, might hold that possession until a demand was made; and if before a demand the horse had died, or if, for any other sufficient reason, he could not comply with the demand, his refusal would not constitute a conversion. A demand and refusal merely do not constitute a conversion, if the party has not the power of compliance. 1 *Camp. R.* 441, *Smith* vs. *Young;* 11 *Vermont R.* 351, *Knapp* vs. *Winchester.*

But in this case, although it did not distinctly appear on what terms the horse came into the possession of the defendant, there was evidence tending to show that it was by a purchase of the entire property, without regard to the mortgage; and there is direct evidence that before the demand the defendant sold the horse, and parted with the possession. The purchase of the entire property, and an assertion of a right to a sole ownership under it, might be held to be a conversion, being inconsistent with the rights of the mortgagee, (6 *East* 540,) although a mere assertion of right, without any other act, has been held not to amount to a conversion. 8 *Vermont R.* 30, *Irish* vs. *Cloyes.* And it seems clear that the subsequent sale was of itself a conversion. The general principle is, that assuming to one's self the property and right of disposing of another man's goods, is a conversion. 6

*East* 540, *McCombie* vs. *Davis*, cites 6 *Mod.* 212 ; 7 *Johns. R.* 254, *Bristol* vs. *Burt ;* 10 *Johns.* 175, *Murray* vs. *Burling ;* 5 *Cowen's R.* 323, *Reynolds* vs. *Shuler.*

It is so in the case of a sale of the entire property by a tenant in common. 3 *Johns. R.* 175, *Wilson* vs. *Reed ;* 9 *Cowen's R.* 230, *Hyde* vs. *Stone ;* 7 *Wendell's R.* 449, *Gilbert* vs. *Dickerson ;* 9 *Wend. R.* 338, *Farr* vs. *Smith ;* 21 *Wend.* 72, *White* vs. *Osborn ;* 21 *Pick. R.* 559, *Weld* vs. *Oliver ;* 9 *N. H. Rep.* 511, *Odiorne* vs. *Lyford.* And the principle seems to be equally applicable in the case of a sale by a mortgager, or any one claiming under him, in exclusion of the rights of the mortgagee.

*New trial granted.*